# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| IN RE: EXCISE TAX LITIGATION | ) | |
| | ) | |
| PSMT, LLC, | ) | |
|       Plaintiff, | ) | |
|       vs. | ) | Civil No. 2019-118 |
| THE GOVERNMENT OF THE VIRGIN ISLANDS, THE VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE, and JOEL A. LEE IN HIS CAPACITY AS DIRECTOR OF INTERNAL REVENUE, | ) | |
|       Defendants. | ) | |
| APEX CONSTRUCTION, INC., | ) | |
|       Plaintiff, | ) | |
|       vs. | ) | Civil No. 2021-39 |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
|       Defendant. | ) | |
| BLUEWATER CONSTRUCTION, INC., | ) | |
|       Plaintiff, | ) | |
|       vs. | ) | Civil No. 2021-40 |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
|       Defendant. | ) | |

| | | |
|---|---|---|
| MSI BUILDING SUPPLIES, INC., | ) | |
| | ) | Civil No. 2021-41 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendant. | ) | |
| UNITED CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 2021-43 |
| | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendant. | ) | |
| IMPEX TRADING INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 2021-44 |
| | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendant. | ) | |
| B&B MANUFACTURING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 2021-52 |
| | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Before the Court are the United States Virgin Islands' motions to dismiss in each of the captioned cases.¹ On February 17, 2022, after the motions were fully briefed, the Court held an evidentiary hearing and heard oral argument. The parties made additional written submissions thereafter. The motions are thus ripe for decision.

### I. BACKGROUND

A. <u>As to All Plaintiffs</u>

Plaintiffs are seven Virgin Islands businesses that regularly import goods.² The USVI, which is named as a defendant in each case,³ is "an unincorporated territory of the United States of America."⁴ In these actions, plaintiffs seek a refund of excise taxes paid to the USVI pursuant to 33 V.I.C. § 42, a Virgin Islands statute.⁵ PSMT seeks a refund of taxes paid between 2016 and

---

¹ On November 18, 2021, the cases were consolidated and referred to the undersigned for a Report and Recommendation on the pending motions to dismiss. *See*, *e.g.*, [ECF 14] in Civil Action No. 21-52.

² PSMT, LLC is a Virgin Islands limited liability company that imports "medicines, household goods, electronics, cosmetics, mattresses, carbonated and other beverages, and other grocery items." Compl. [ECF 1] ¶¶ 1, 14 in Civil Action No. 19-118. Apex Construction, Inc. and Bluewater Construction, Inc. are construction companies operating in the USVI that regularly import items. Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-39; Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-40. MSI Building Supplies, Inc. and B&B Manufacturing, Inc. operate building supply stores on St. Thomas and regularly import items. Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-41; Compl. [ECF 1] ¶¶ 19, 21 in Civil Action No. 21-52. United Corporation operates a grocery store on St. Croix and regularly imports items. Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-43. Impex Trading International, Inc. operates a retail merchandise store on St. Thomas and regularly imports items. Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-44.

³ In Civil Action No. 19-118, plaintiff names as additional defendants the Virgin Islands Bureau of Internal Revenue and its director. Compl. [ECF 1] ¶¶ 3, 4 in Civil Action No. 19-118.

⁴ 48 U.S.C.A. § 1541(a).

⁵ *See*, *e.g.*, Compl. [ECF 1] ¶ 22 in Civil Action No. 21-52. Plaintiff B&B alleges it filed a claim for refund on December 17, 2020, which the government has not disallowed or disputed, but which it has failed to pay. *Id.* ¶¶ 26, 27, 29. Plaintiff Apex avers it filed a claim for refund on January 31, 2019, which the government has not disallowed or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 26, 27, 29 in Civil Action No. 21-39. Plaintiff Bluewater contends it filed a claim for refund on January 31, 2019, which the government has not disallowed

2019;[6] the remaining plaintiffs seeks a refund of taxes paid between 2016 and 2018.[7] Plaintiffs contend that although the law is facially neutral in that it taxes both imported goods and goods produced in the Territory, because the USVI only collected the tax on imported goods during the relevant time period, the law—as then implemented—violated the United States Constitution's Commerce Clause.[8] Plaintiffs thus urge this Court to rule in their favor and award the tax refunds sought,[9] noting that the District Court of the Virgin Islands did so previously in the case of *Reefco Services, Inc. v. Government of the Virgin Islands*,[10] a case involving a challenge to the same local statute brought by a different plaintiff.[11] Moreover, according to plaintiffs, the Court should collaterally estop the USVI from relitigating the same issues in this case.[12]

---

or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 24, 25, 27 in Civil Action No. 21-40. Plaintiff MSI alleges it filed claims for refund on April 2, 2019, and November 2, 2020, which the government has not disallowed or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 25-26, 28, 30, 31, 33 in Civil Action No. 21-41. Plaintiff United alleges it filed claims for refund on April 25, 2019, March 23, 2019, June 10, 2019, February 24, 2020, and November 5, 2020, which the government has not disallowed or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 24-57 in Civil Action No. 21-43. Impex avers it filed a claim for refund on November 16, 2020, which the government has not disallowed or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 25, 26, 28 in Civil Action No. 21-44. These six plaintiffs filed their cases between April 26 and June 18, 2021.

[6] Compl. [ECF 1] at 1 in Civil Action No. 19-118. PSMT alleges it made claims for refunds of excise taxes paid on February 8 and 22, and on May 23, 2019, and that the "government has not paid an excise tax refund or otherwise responded to PSMT's refund claims." *Id*. ¶¶ 17-20. PSMT filed its action on December 22, 2019.

[7] *See, e.g.*, Compl. [ECF 1] ¶ 22 in Civil Action No. 21-52.

[8] *See, e.g., id.* ¶¶ 8-11.

[9] PSMT seeks $1,675,402.80. Compl. [ECF 1] ¶ 15 in Civil Action No. 19-118. Apex seeks $35,002.49. Compl. [ECF 1] ¶ 29 in Civil Action No. 21-39. Bluewater seeks $41,529.69. Compl. [ECF 1] ¶ 29 in Civil Action No. 21-40. MSI seeks $665,743.83. Compl. [ECF 1-1] in Civil Action No. 21-41; Compl. [ECF 1-2] in Civil Action No. 21-41. United seeks $523,554.18. Compl. [ECF 1] ¶ 59 in Civil Action No. 21-43. Impex seeks $128,210.86. Compl. [ECF 1] ¶ 23 in Civil Action No. 21-44. B&B seeks $116,260.95. Compl. [ECF 1] ¶ 26 in Civil Action No. 21-52.

[10] 2018 WL 4690366 (D.V.I. Sept. 28, 2018), *aff'd in part, vacated in part, and remanded*, 830 F. App'x 81 (3d Cir. 2020).

[11] *See, e.g.*, Compl. [ECF 1] ¶¶ 1, 2 in Civil Action No. 21-52.

[12] *See, e.g.*, [ECF 10] at 4-7 in Civil Action No. 21-52.

The USVI seeks dismissal on various grounds. First, the USVI contends that either the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because plaintiffs lack standing, or dismissal is appropriate under Rule 12(b)(6) because, by failing to allege a "cognizable constitutional injury," plaintiffs have failed to state a claim upon which relief may be granted.[13] Alternatively, the USVI contends that even if plaintiffs have stated a viable constitutional claim—not under the Commerce Clause but under the so-called Dormant Commerce Clause—the Court should defer to the territorial courts pursuant to the tax comity doctrine.[14] Lastly, the USVI challenges plaintiffs' assertion that the doctrine of non-mutual collateral estoppel applies.[15]

B.  <u>Issues Unique to PSMT</u>

PSMT seeks not only a refund of the excise taxes it paid between 2016 and 2019, but also a refund of the container taxes it paid to the USVI during this same period pursuant to 33 V.I.C. § 75, another Virgin Islands statute.[16] PSMT contends that it is a "regular importer of containers of goods . . . subject to the territorial container tax,"[17] including goods subject to and exempt from the excise tax.[18] PSMT seeks a refund for the container taxes it paid because it alleges the tax violates Commerce Clause, Tonnage Clause, and Import-Export Clause principles.[19] Further,

---

[13] *See, e.g.*, [ECF 8] at 1 in Civil Action No. 21-52.

[14] *See, e.g.*, *id.* at 7-10.

[15] *See, e.g.*, [ECF 13] at 15-20 in Civil Action No. 21-52.

[16] Compl. [ECF 1] ¶¶ 21-31 in Civil Action No. 19-118.

[17] *Id.* ¶ 24.

[18] *Id.*

[19] *Id.* ¶ 26.

PSMT claims that the USVI continues to collect the container tax;[20] PSMT seeks declaratory and injunctive relief in addition to a refund.[21]

The USVI seeks to dismiss PSMT's case under Rule 12(b)(1) on the grounds that the tax comity doctrine and the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, divest this Court of subject matter jurisdiction.[22] The USVI also seeks dismissal under Rule 12(b)(6).[23]

## II. LEGAL STANDARDS

A. Standards of Review

1. Rule 12(b)(1)

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). In other words, "[s]tanding is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Rule 12(b)(1), which provides that a party may assert the defense of lack of subject matter jurisdiction by motion, is therefore the appropriate vehicle for challenging a plaintiff's standing to bring a claim in federal court.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They are as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . .

---

[20] *Id.* ¶ 31.

[21] *Id.* at 6.

[22] [ECF 11] at 2-4 in Civil Action No. 19-118.

[23] *Id.* at 4-19.

> . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (citations and quotation marks omitted); *accord Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.") (quotation marks omitted). Further, it is well settled that "[t]he party invoking federal jurisdiction bears the burden of proving standing." *Lujan*, 504 U.S. at 561.

Lastly, a challenge to a party's standing may either be facial or factual. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge under Rule 12(b)(1), like a Rule 12(b)(6) motion to dismiss for failure to state a claim, requires that the court "consider the allegations of the complaint as true" in its analysis. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at 891). In a factual challenge, on the other hand, the defendant attacks the factual bases for jurisdiction that are alleged in the complaint by presenting competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As such, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891); *accord HWI Partners, LLC v. Choate, Hall & Stewart LLP*, 2013 WL 6493118, at *3, (D. Del. Dec. 11, 2013) ("Defendants' challenge to [plaintiff's capacity to sue] represents a factual attack on subject matter jurisdiction because it is based on underlying facts or evidence outside the complaint, which the court may consider.").

    2.    <u>Rule 12(b)(6)</u>

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint "must state enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). Moreover, a court need not "accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

"In deciding a motion to dismiss [under Rule 12(b)(6)], the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff." *Dicesare v. Office of Children, Youth & Families*, 2012 WL 2872811, at *2 (W.D. Pa. July 12, 2012) (citing *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

B.  Constitutional Principles

    1.  Dormant Commerce Clause Principles

The Commerce Clause provides that "Congress shall have Power . . . to regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I, § 8. In addition to the "affirmative grant of power to Congress, [] the Clause also has dormant or negative implications." *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993) (quotation marks omitted). To wit, the so-called Dormant Commerce Clause implicitly "limits the power of the States to erect barriers against interstate trade." *Id.* (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980) (quotation marks omitted)); *accord Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, --- U.S. ---, 139 S. Ct. 2449, 2459 (2019) (noting that the Dormant Commerce Clause "prohibits state laws that unduly restrict interstate commerce"). *See also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) ("The negative or dormant implication of the Commerce Clause prohibits state taxation . . . that discriminates against or unduly burdens interstate commerce.") (citations omitted).

"[B]ecause the Virgin Islands is an unincorporated territory, the entire Constitution does not apply to it of its own force." *Polychrome Int'l Corp.*, 5 F.3d at 1534 (citing *JDS Realty Corp. v. Gov't of V.I.*, 824 F.2d 256, 259 (3d Cir. 1987)). Nevertheless, "Congress has comprehensive powers to regulate territories under the Territorial Clause, Art. IV, § 3, cl. 2, and [] Congress' Commerce Clause powers are implicit in that clause." *Polychrome Int'l Corp.*, 5 F.3d at 1534 (quotation marks omitted). Thus, although the USVI is not governed directly by the Dormant Commerce Clause, it is subject to Dormant Commerce Clause principles through the Territorial

Clause, which expressly grants Congress the "power to prescribe all 'needful Rules and Regulations' for territories." *Polychrome Int'l Corp.*, 5 F.3d at 1534. In sum, "when territorial enactments affect interstate or foreign commerce—a subject over which Congress has supreme control—those enactments must be scrutinized under Dormant Commerce Clause principles." *Id.*

    2.    <u>Tonnage Clause and Import-Export Clause Principles</u>

"The U.S. Constitution prohibits states from 'lay[ing] any Duty of Tonnage' without the consent of Congress." *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3rd Cir. 2015) (quoting U.S. Const. art. I, § 10, cl. 3). Although the term "Duty of Tonnage" refers to the practice of taxing a ship according to "its tons of carrying capacity," *Maher Terminals, LLC*, 805 F.3d at 106, the Tonnage Clause is understood to prohibit states from imposing "all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port," *id.* at 107 (quoting *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265-66 (1935) (quotation marks omitted)). Its purpose was, *inter alia*, to "restrain states from obtaining 'geographical vessel-related tax advantages.'" *Maher Terminals, LLC*, 805 F.3d at 106 (quoting *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 7 (2009)). Further, because "the Tonnage Clause was meant to protect vessels as vehicles of commerce,"[24] it applies to charges relating to a vessel's use of the port, as opposed to fees for other services.[25] "[T]o come within the Tonnage Clause's zone of interests . . . a plaintiff must allege an injury to a vessel as a vehicle of commerce,"

---

[24] *Maher Terminals, LLC*, 805 F.3d at 107 (citing *Packet Co. v. Keokuk*, 95 U.S. 80, 84-85 (1877)).

[25] *Maher Terminals, LLC*, 805 F.3d at 108 (citing *Packet Co.*, 95 U.S. at 85).

*Maher Terminals, LLC*, 805 F.3d at 108, or to representatives of a vessel, such as "an owner, ship captain, supercargo, or the passengers," *id.*[26] (citing *Passenger Cases*, 48 U.S. 283, 458 (1849)).

The Import-Export Clause provides that "[n]o State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws . . . ." U.S. Const. art. I, § 10, cl. 2. Like the Tonnage Clause, the Import-Export Clause "generally prohibits states from taxing imports and exports." *Maher Terminals, LLC*, 805 F.3d at 106. The purpose of the Import-Export Clause is "to prevent states with convenient ports from taxing goods travelling in commerce at the expense of consumers in less-fortunately located states." *Id.; accord Michelin Tire Corp. v. Wages*, 423 U.S. 276, 289-90 (1976) ("An evil to be prevented by the Import-Export Clause was the levying of taxes which could only be imposed because of the peculiar geographical situation of certain States that enabled them to single out goods destined for other States. In effect, the Clause was fashioned to prevent the imposition of exactions which were no more than transit fees on the privilege of moving through a State.").

Finally, although the Tonnage Clause and Import-Export Clause of the Constitution do not apply directly to the Virgin Islands, it appears that their underlying principles—like the principles underlying the Dormant Commerce Clause—may well apply to the Virgin Islands. In other

---

[26] As the Third Circuit explained,

> [t]axes on certain people (the owner, captain, supercargo, and crew) directly impact where a vessel decides to make port by taxing those responsible for the vessel's navigation, and taxes on passengers will likely indirectly impact a vessel's decisions by reducing demand for passage on the vessel. The interests of these people are the same as the interests of the vessels they occupy, so the Tonnage Clause prohibits taxes on them just as it prohibits taxes on the vessels themselves.

*Maher Terminals, LLC*, 805 F.3d at 108.

words, given that the Third Circuit has concluded that Commerce Clause powers are implicit in the Territorial Clause, it seems likely that the appellate court would similarly conclude that the Tonnage Clause and the Import-Export Clause powers are also implicit in the Territorial Clause, especially if they exist as corollaries to the Commerce Clause.[27]

C.      The Tax Injunction Act and Tax Comity Doctrine

    1.      The Tax Injunction Act

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Supreme Court has held that the TIA also bars courts from awarding declaratory relief, but it has not addressed whether it similarly precludes damage awards. *See California v. Grace Brethren Church*, 457 U.S. 393, 408-11 (1982).

When faced with the issue of whether the TIA applies to the Virgin Islands, the Third Circuit found, in *Pan American World Airways, Inc. v. Duly Authorized Government of the Virgin Islands*, that the express terms of the statute precluded its application to the Territory. 459 F.2d 387, 390-91 (3d Cir. 1972). Recently, in *American Resort Development Association v. Government of the Virgin Islands*, the Third Circuit observed that "[n]othing in the past half-century has disturbed *Pan American*'s status as governing law." 848 F. App'x 79, 81 (3d Cir. 2021). Thus, the TIA does not apply to the Virgin Islands.

---

[27] *See Maher Terminals, LLC*, 805 F.3d at 109 ("Though the Tonnage Clause supports the Commerce Clause (as well as the Import-Export Clause), the Tonnage Clause is not the Commerce Clause. The Tonnage Clause protects the free flow of commerce through a specific means—by protecting vessels operating as vehicles of commerce."); *id.* at 113 ("[T]he Tonnage Clause was added to the Constitution and so provided, along with the Import-Export Clause, a set of bars to complement the Commerce Clause barricade against state meddling in matters of national and foreign commerce.") (Jordan, J., concurring in part).

2. <u>The Tax Comity Doctrine</u>

Generally, "[t]he comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010). "Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* In such cases, there are "several factors a federal court might weigh in deciding whether to refrain, based upon comity, from deciding such a case." *Z&R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527, 531 n.8 (3d Cir. 2015). They are:

> [W]hether: (1) the challenged law concerned "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.

*Id.* (quoting *Levin*, 560 U.S. at 431-32.).

In *Pan American*, the Third Circuit stated that "no [] notions of federalism as underlie limitations on the power of the federal district courts to enjoin certain state actions are applicable to the territories." 459 F.2d at 391. In *Great Bay Condominium Owners Association, Inc. v. Government of the Virgin Islands*, however, the court considered whether the tax comity doctrine applied to the USVI and concluded that it did. 2018 WL 4690372, at *9 (D.V.I. Sept. 28, 2018). In *Great Bay*, the plaintiffs challenged the constitutionality of a territorial real property tax and time share fee. *Id.* at *1-2. In deciding to entertain the case, the court first explained that Congress may provide that Virgin Islands law be treated "with much of the independence of state law." *Id.* at *10 (quoting *Bluebeard's Castle, Inc. v. Gov't of V.I.*, 321 F.3d 394, 401 (3d Cir. 2003)). The court then observed that the area of property taxation in the Virgin Islands is

controlled by federal, as well as local, law.[28]   After considering Third Circuit authority, the *Great Bay* court—relying primarily upon dicta in those cases—articulated for the first time a standard to be applied when considering a challenge to a territorial tax law under the tax comity doctrine:

> [W]hen plaintiffs file suit seeking injunctive or declaratory relief or damages with respect to a local tax imposed on them by the Virgin Islands Government, they may only proceed in this Court if: (1) Congress has entered the field and the plaintiffs are seeking to enforce such a federally-created right, or (2) a plain, adequate, and complete remedy is not available in the local courts.

*Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *12.   The court reasoned that when Congress "extended constitutional provisions to the Virgin Islands or otherwise passed a law which has the same effect in the territory as it does in the states," default federalism doctrines apply.   *Id.* In addition, the *Great* Bay court noted that in several cases the Third Circuit expressly interpreted the 1984 amendment to the Revised Organic Act "to require deference to the local courts when an Article III district court would similarly defer to a state court."[29]   *Id.* at *10 (citing *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360-61 (3d Cir. 2007) (stating that there was "no reason not to incorporate the federalism principles applicable through the circuit in our relationship with the Virgin Islands courts.")).   Citing additional authorities applying federalism doctrines to the Territory,[30] the court ultimately concluded that the tax comity doctrine applies to the Virgin

---

[28]  *Id.* at *11; *see also Berne Corp. v. Gov. of V.I.*, 120 F. Supp. 2d 528, 531 n.3 (D.V.I. 2000) (stating that "the subject of [the] lawsuit is a federal statute and not a local, territorial tax," referring to 48 U.S.C. § 1401a).

[29]  "The form of government in the Virgin Islands is defined by the Organic Act, originally passed by Congress in 1936, and subject to substantial revision in 1954, when it became known as the Revised Organic Act, and again in 1984.   The Revised Organic Act, 48 U.S.C. § 1541 *et seq.*, effectively serves as a constitution for the Virgin Islands."  *Bluebeard's Castle, Inc.*, 321 F.3d at 399, n.9 (citations omitted).

[30]  The *Great Bay* court noted that "[48 U.S.C.]§ 1613 makes the Erie doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands."  *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *10 (quoting *Edwards*, 497 F.3d at 360).   The court also discussed two cases in which the Third Circuit applied another "comity-based abstention doctrine[] to the Virgin Islands."  *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *11.   In *Williams v. Government of the Virgin Islands Board of Medical Examiners*, 360 F. App'x 297,

Islands when a federal court is faced with a challenge to a territorial tax law. *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *12.

While the *Great* Bay court's reasoning on the issue of tax comity is persuasive, its decision was more in the nature of a prediction as to where the law might be in the future, rather than where it is at present. Further, apart from the court in *Great Bay*,[31] no other court has discussed whether the tax comity doctrine applies to the Virgin Islands. Although the USVI raised the issue of tax comity in the trial court in *Reefco*, neither that court (in ruling for the plaintiff) nor the Third Circuit (in its affirmance) made any mention of comity.

In addition, although the issue was before the Third Circuit in *American Resort Development Association*, the court stated that it "need not determine whether the tax comity doctrine applies." 848 F. App'x at 81 n.3. That said, the Third Circuit's review of the *Great Bay* court's holding that the TIA arguably applied in the Virgin Islands in instructive here. Specifically, the Third Circuit found that the rationale behind the district court's decision was flawed: "[W]e will not interpret Congress's repeal of a federal statute governing local property taxes—or the report accompanying the same—to extend the TIA to the Virgin Islands by mere implication." 848 F. App'x at 81. Mindful of the Third Circuit's caution not to extend decisional

---

301 (3d Cir. 2010) and *Kendall v. Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009), the Third Circuit held that the *Younger* abstention doctrine applied to the Virgin Islands. Under the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), "[a]bstention is appropriate when: (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges." *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002).

[31] In the companion case to *Great Bay*, the District Court noted that the tax comity issue in both cases was the same. *Kimberly Stonecipher-Fisher Revocable Living Trust v. Gov't of V.I.*, 2018 WL 4704030, at *6 (D.V.I. Sept. 30, 2018), *aff'd sub nom, Am. Resort Dev. Assoc.*, 848 F. App'x at 81. Employing issue preclusion, the District Court determined to exercise jurisdiction in that case as well. *Kimberly Stonecipher-Fisher Revocable Living Trust*, 2018 WL 4704030, at *8.

principles to the Virgin Islands by "mere implication," this Court therefore declines to apply the tax comity doctrine in these cases.

## II.  DISCUSSION

A.  <u>Excise Tax Claims</u>[32]

1.  <u>The Court has Subject Matter Jurisdiction Because Plaintiffs Have Properly Pled Standing</u>

Plaintiffs have pled sufficient facts to establish their standing and thus this Court's subject matter jurisdiction. Plaintiffs allege that the USVI implemented 33 V.I.C. § 42 in an unconstitutionally impermissible manner. They allege that as a result, they paid an unlawful tax and the USVI wrongfully deprived them of money between 2016 and 2019. They further allege that the deprivation is ongoing. The alleged harm is therefore concrete, particularized, and actual.[33] Second, plaintiffs allege a causal connection between their injury and the conduct complained of.[34] Finally, if the Court finds in plaintiffs' favor and orders the USVI to issue the refunds sought, plaintiffs' injury would be redressed.[35] Accordingly, the Court recommends that

---

[32] Plaintiffs argue, under the doctrine of offensive non-mutual collateral estoppel or issue preclusion, that the Court should not reconsider issues of law and fact that were previously resolved by the District Court and the Third Circuit in the *Reefco* litigation. *See, e.g.*, [ECF 10] at 4-7 in Civil Action No. 21-52. The USVI contends that the doctrine does not apply. *See, e.g.*, [ECF 13] at 15-20 in Civil Action No. 21-52. The Court need not address the parties' arguments, however, as the application of the doctrine is more appropriately considered at the merits stage.

[33] *See, e.g.*, Compl. [ECF 1] ¶¶ 21-23 in Civil Action No. 21-52; [ECF 1-1] at 1 in Civil Action No. 21-52 (Copy of B&B's Excise Tax Claim Form 843 Ex-V.I. dated 12/16/2020 requesting refund of "illegal excise tax" totaling $116,260.95); *id.* at 2-24 (Copies of B&B's Excise and Container Tax Return Form 721VI demonstrating payment of excise tax from 2016-2018).

[34] *See, e.g.*, Compl. [ECF 1] ¶¶ 8-24 in Civil Action No. 21-52.

[35] The USVI argues at length that plaintiffs have not pled a "cognizable constitutional injury" because, according to the USVI, unless a plaintiff identifies similarly situated companies that were not subject to the excise tax, it fails to establish its standing to assert the claim. *See, e.g.*, [ECF 8] at 3-6 in Civil Action No. 21-52. However, the USVI appears to conflate the plaintiff's obligation to allege a concrete injury for standing purposes with its ultimate obligation to prove that injury. *See Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 479 (3d Cir. 2018) (stating that the court's "standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity") (quoted in *Morton v. U.S.V.I.*, 2021 WL 6137867, at *3 (3d Cir. Dec. 29, 2021)). Moreover, even the USVI appears

the USVI's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) be denied.

    2.    <u>Plaintiffs Have Adequately Pled a Claim Under Dormant Commerce Clause Principles</u>

Plaintiffs contend as follows: (1) 33 V.I.C. § 42, as originally enacted in 1959, imposed a territorial excise tax on goods imported to the Territory but not on goods produced locally;[36] (2) 33 V.I.C. § 42, as amended in 1984, imposed the territorial excise tax on goods produced within the Territory;[37] (3) notwithstanding the amendment, the Territory did not collect the excise tax on locally produced goods until 2019;[38] and (4) between 2016 and 2019, the USVI unlawfully collected the excise tax from plaintiffs on imported goods, "in violation of the Commerce Clause."[39] PSMT's allegations are similar.[40]

The USVI contends that none of the plaintiffs states a claim under the Dormant Commerce Clause. As to PSMT, the USVI argues that the claim must fail because "PSMT does not allege that, during the time period at issue, there was an in-territory substantially similar entity in competition with it who benefitted from not paying excise taxes." [ECF 40] at 4 in Civil Action No. 19-118. Similarly, as to the other plaintiffs, the USVI asserts that "Plaintiffs do not allege

---

to recognize that this argument bears more on the issue of whether plaintiffs have stated a claim under Rule 12(b)(6), than on Article III standing. *See, e.g.*, [ECF 13] at 9 in Civil Action No. 21-52 ("Plaintiff has failed to state a claim in that it has not alleged that any in-territory commercial interest was favored, directly or indirectly, by the challenged application of the statute at Plaintiff's expense."); *see also* [ECF 47] at 3 n.1 in Civil Action No. 21-51 (acknowledging in the USVI's post hearing brief that the cases upon which it previously relied dealt mostly with challenges under Rule 12(b)(6)).

[36] *See, e.g.*, Compl. [ECF 1] ¶ 8 in Civil Action No. 21-52.

[37] *Id.* ¶ 10.

[38] *Id.* ¶ 11.

[39] *Id.* ¶ 22. *See also id.* ¶¶ 11, 13.

[40] Compl. [ECF 1] ¶¶ 7-10, 14, 15 in Civil Action No. 19-118.

that, during the time period at issue, there was an in-territory entity in competition with them who benefitted from not paying the excise tax that Plaintiffs were required to pay." *See, e.g.*, [ECF 47] at 6 in Civil Action No. 21-52. The Court does not agree that such allegations are required.

In *Reefco*, the District Court found that the "excise tax is imposed on certain items that are imported into the Virgin Islands [and that n]o excise tax is levied on similar items that are manufactured in the Virgin Islands." 2018 WL 4690366, at *7. As a result, the court held: "Any excise tax assessed under Section 42 was improperly assessed. Accordingly, Reefco is entitled to a refund of those taxes." *Id*. On appeal, the Third Circuit found that, although the statute was facially neutral, that excise taxes were not assessed against local manufacturers for over 30 years "is nothing short of a blatant 'preference for domestic commerce over [interstate] commerce.'" *Reefco Servs., Inc.*, 830 F. App'x at 85 (alteration in original). The appellate court concluded: "Local manufacturers were afforded a tax break not available to foreign and domestic importers. The resulting violation of the Commerce Clause is obvious . . . ." *Id.*

Here, the Court concludes that plaintiffs have adequately pled a claim that 33 V.I.C. § 42, as implemented between 2016 and 2019, unfairly discriminated against interstate commerce in violation of Dormant Commerce Clause principles. Not only do plaintiffs expressly reference the *Reefco* decisions in their complaints, but they state why they contend the excise tax is discriminatory and how they have been discriminated against. Nothing further is required.

B.     PSMT's Container Tax Claim

PSMT asserts the following: (1) the container tax, 33 V.I.C. § 75, expressly requires the Bureau of Internal Revenue to issue regulations governing its administration;[41] (2)

---

[41] Compl. [ECF 1] ¶ 21 in Civil Action No. 19-118.

notwithstanding the statutory language, the USVI has not promulgated any such regulations;[42] (3) PSMT regularly imports containers subject to the tax—these containers include goods subject to the excise tax and goods exempt from the excise tax;[43] (4) between 2016 to 2019, the USVI collected the container tax from PSMT on imported containers;[44] (5) PSMT sought refunds from the USVI, claiming the tax violated Commerce Clause, Tonnage Clause, and Import-Export Clause principles;[45] and (6) the USVI has not refunded the container tax or otherwise responded to PSMT's claim.[46]  Assuming for present purposes that PSMT has standing, PSMT nevertheless fails to state a claim under any of these principles.

Regarding PSMT's claim that the container tax violates Commerce Clause principles, PSMT alleges no facts to explain how this tax discriminates or otherwise violates these principles. Regarding PSMT's claim that the container tax violates Tonnage Clause principles, PSMT fails to allege an injury to any vessel or representative of a vessel.  *See Maher Terminals, LLC*, 805 F.3d at 108.  Thus, PSMT neglects to aver that it, as an importer of various consumer goods,[47] falls within the Tonnage Clause's zone of interests.   Finally, regarding PSMT's claim that the container tax violates Import-Export Clause principles, PSMT fails to specify whether the container tax is an impost or duty,[48] and fails to allege or even hint at how the tax violates the clause.

---

[42]  *Id.* ¶ 22.

[43]  *Id.* ¶ 24.

[44]  *Id.* ¶ 25.

[45]  *Id.* ¶¶ 26-28.

[46]  *Id.* ¶ 29.

[47]  *Id.* ¶¶ 1, 14.

[48]  "[I]mpost and duty are narrower terms than tax."  *U.S. v. Int'l Bus. Machs. Corp.*, 517 U.S. 843, 857 (1996) (citing *Michelin Tire Corp.*, 423 U.S. at 290-293).   Further, to determine whether the tax is an impost or duty,

## IV. CONCLUSION

Accordingly, the premises considered,

It is **RECOMMENDED** that the USVI's motions to dismiss be **DENIED** as to plaintiffs' excise tax claims.

It is further **RECOMMENDED** that the USVI's motion to dismiss PSMT's container tax claims be **GRANTED**, and that PSMT be granted leave to amend.

Any objections to this Report and Recommendation must be filed in writing within 14 days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated:** March 10, 2022  S\_____
**RUTH MILLER**
United States Magistrate Judge

---

courts must review the nature of the tax. *Dep't of Revenue of Wash. v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 752 (1978) (citing *Michelin Tire Corp.*, 423 U.S. at 279, 290-294). Specifically, courts must determine "whether the exaction offend[s] any of the three policy considerations leading to the presence of the Clause:

> The Framers of the Constitution thus sought to alleviate three main concerns . . .: the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.

*Id.* at 752-53 (quoting *Michelin Tire Corp.*, 423 U.S. at 285-286).